IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FERREN C., et al.          :        CIVIL ACTION
                           :
        v.                 :
                           :
SCHOOL DISTRICT OF PHILADELPHIA :   NO. 08-858

MEMORANDUM

Dalzell, J.                            January 28, 2009

        Ferren C. and her parents, Ronald C. and Leslie C. (together "Plaintiffs"), sued the School District of Philadelphia ("School District") and asked us to (1) declare her most recent IEP as pendent under the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"); and (2) order the School District to develop annual Individualized Education Programs ("IEPs") and serve as the Local Educational Agency ("LEA") for Ferren for three years.

        Ferren is more than twenty-one years old and is thus outside of the usual protections the IDEA offers to children with disabilities. However, the School District owes Ferren three years of compensatory education services due to its past failures to provide her with a free and appropriate public education ("FAPE"). The School District is willing to pay for Ferren's compensatory education but contends that it has no other ongoing obligation to her.

The Plaintiffs and the School District both submitted motions for judgment on the administrative record. We will partially grant Plaintiffs' motion and partially grant the School District's motion.

I.   **Factual Background**

We take many of the facts below from the parties' stipulation of facts, but we supplement that document with undisputed facts from the administrative record. All of these facts substantively agree with those in the opinions the Hearing Officer and Appeals Panels issued in this case, to the extent that they made these factual findings.

A.   **Ferren's Disabilities and Special Educational Needs**

Ferren is a twenty-three year old[1] young woman who has multiple disabilities, including autism, pervasive developmental disorder, and speech and language deficits. Joint Stip. ¶ 1. It is difficult accurately to assess her cognitive ability because

---

[1] At the time the parties filed their joint stipulation, Ferren was twenty-two. Joint Stip. at n.1. However, the parties also state that Ferren was born on October 15, 1995. Joint Stip. ¶ 2. We assume that she was born in 1985; otherwise, she would be thirteen years old and the School District would clearly have an obligation to develop an IEP for Ferren under the IDEA. See also Admin. Record Ex. 11, Ex. C to Ex. 11 at 1 (listing Ferren's date of birth as October 15, 1985).

2

her IQ is in the first percentile. <u>Id.</u> at ¶ 5. She "has not developed essential basic skills for communication, behavior management and social interaction" and "experiences significant regression in skill acquisition." <u>Id.</u> at ¶¶ 6,8.

During all times relevant to this case, Ferren has lived in the School District. <u>Id.</u> at ¶ 3. Because of her disabilities, the School District identified Ferren as eligible for special education services under the IDEA, 20 U.S.C. § 1401, <u>et seq.</u> Joint Stip. at ¶ 4. Ferren's parents do not have the training or experience to develop a compensatory education program for her, which would involve "highly structured, systematic instruction" that is "specifically keyed" to her particular educational needs. <u>Id.</u> at ¶¶ 7,22.

### B. <u>Ferren's Awards of Compensatory Education</u>

This is not the first legal conflict between Plaintiffs and the School District regarding Ferren's education.[2] In resolution

---

[2] In another conflict that does not affect our decision here, the Special Education Hearing Officer awarded Ferren 3180 hours of compensatory education for the School District's denial of FAPE to her for two-and-a-half years. Admin. Record Ex. 16, Ex. P-8 to Ex. 16 at 14. In addition to other problems, her IEPs for two school years "lack[ed] the kind of present levels of functioning that can demonstrate that the child is making year to year progress; contain[ed] a shockingly sparse amount of goals

(continued...)

of past disputes, the School District created a trust fund for Ferren and agreed to provide her with three years of compensatory education. Id. at ¶ 14. As of January 17, 2007, the School District estimated that the compensatory education would cost $218,670 at Elwyn Davidson School, Ferren's most recent placement. Id. at ¶ 17. The parties intended for her compensatory education to begin in the 2007-08 school year. Id. at ¶ 14.

Unfortunately, the parties have not consistently or precisely defined these three years of compensatory education. In fact, although the record includes documentation of two of those years, neither party was able to document the third. Nonetheless, the School District has "acknowledge[d] that there is a third year out there." Admin. Record Ex. 8, Transcript of Due Process Hearing, September 25, 2007, at 22. See also Joint Stip. at ¶ 14. The Special Education Due Process Appeals Review Panel awarded the first documented year on July 7, 1995. Admin. Record Ex. 11, Ex. A attached to Ex. 11 at 5. At a due process hearing on

---

[2] (...continued)
and objectives for a student with such complex disabilities; [were] utterly devoid of meaningful description of specially designed instruction; and lack[ed] any meaningful transition planning for this extremely needy student." Id. at 11. The Hearing Officer compensated Ferren "for each school day as though [the School District] provided nothing at all for Ferren -- since in essence that is what the district did." Id.

September 4, 2001, the parties placed on the record their agreement that Ferren was entitled to another year of compensatory education. Admin. Record Ex. 11, Ex. B attached to Ex. 11 at 18-39. For this second year, the parties agreed that "one year will be added to Ferren's eligibility for Special Education, with the understanding that the District will assume responsibility for this relief." Id. at 20. The parties did not define the key terms "eligibility" or "responsibility." In addition, the School District was to "identify one or two persons who have the authority to authorize payments or otherwise commit District resources needed for the implementation of [the] agreement." Id. at 30. On September 7, 2006, the School District stated that "we have agreed that Ferren is entitled to 3 additional years of education beyond her 21st birthday." Admin. Record Ex. 11, Ex. F attached to Ex. 11 at 1. Again, the School District did not define the phrase "additional years of education." More recently, the School District wrote that "Ferren has received compensatory education in the form of a substantial trust fund and three (3) years of compensatory education beyond her 21st birthday." Admin. Record Ex. 13, Letter from the School District's Assistant General Counsel to Hearing Officer Daniel Myers, August 30, 2007, at 2 (emphasis added).

### C.   Elwyn Davidson School

Ferren attended the Elwyn Davidson School ("Elwyn"), an Approved Private School, for three school years beginning in 2004 and ending in 2007. Joint Stip. at ¶ 9. Ferren turned twenty-one on October 15, 2006, so the 2006-07 school year was the last year she attended Elwyn pursuant to an IEP from the School District and Notice of Recommended Educational Placement from her parents. Id. at ¶¶ 9, 13. While Ferren was at Elwyn, the School District provided her transportation.  Elwyn also supplied a "basic functional academic program as well as transition activities." Admin. Record Ex. 8 at 65. Elwyn also provided services to Ferren for speech, occupational therapy, and a "consult" for physical therapy. Id. For a student under twenty-one years of age, the student's school district pays 40% of Elwyn's tuition, and the state Department of Education pays the balance. Id. at 46. See also Joint Stip. at ¶ 10. The school districts of out-of-state students pay 100% of the tuition. Admin. Record Ex. 8 at 66. Similarly, if Ferren attended Elwyn for compensatory education, the School District would pay 100% of her tuition. Id. at 69; Admin. Record Ex. 11, Ex. G attached to Ex. 11 at 1. Elwyn does not "accept private pay students because [it is] not a private school." Admin. Record Ex. 8 at 46-47.

Under the terms of its license, Elwyn generally stops serving students after the school year in which they turn twenty-one. However, Elwyn could serve Ferren during the time of her compensatory education, even though she is over twenty-one, "as long as she is still considered a student in the school program involved with the School District . . . but not independent of that." Id. at 48-49. The School District "believes that Elwyn provided an appropriate education" to Ferren and "that it is capable of providing her with appropriate compensatory education in the future." Joint Stip. at ¶ 25. Elwyn's corporate parent also provides services to people with special needs from "birth to geriatrics." Id. at ¶ 11. Ferren would not need an IEP to enroll in one of the adult programs, but those programs do not "provide any academics." Admin. Record Ex. 8 at 62-63.

All of Elwyn's students have an IEP, and Elwyn can do much of the work that underlies an IEP, including biannual reevaluation reports, IEP team meetings, and drafting the IEP itself. Admin. Record Ex. 8 at 53, Joint Stip. at ¶ 12. When Elwyn drafts an IEP the School District is not involved in the drafting. Admin. Record Ex. 8 at 51. However, parents, the School District, and Elwyn staff meet to discuss the IEP and work together as a team to "determine[] that it's an appropriate IEP

to implement." Id. at 38. Because Elwyn is not a Local
Educational Agency ("LEA"), it requires its students' home school
districts to sign the IEP and serve as LEA. Joint Stip. at ¶ 12;
Admin. Record Ex. 8 at 39-40. Under this arrangement, it is
Elwyn's understanding that "[t]he school district is the
responsible agency" for ensuring that the IEP is implemented.
Admin. Record Ex. 8 at 46. On the other hand, the School District
believes "that with respect to the compensatory education due to
Ferren that it is the parents' burden to select the compensatory
education and in essence just send the bill to the District." Id.
at 88.

The School District's attorney opined that it is "absurd"
for it to remain liable for implementing an IEP for students
after they turn twenty-one. Id. at 136. But an Elwyn
representative testified at Ferren's due process hearing that the
School District had provided an IEP to one Elwyn student for a
"compensatory award year" beyond the last school year in which
the IDEA entitled him to an IEP. Id. at 53-54, 69. The School
District's representative did "not have direct knowledge of that
student." Id. at 74. He could not find an IEP for this child on
the School District's computer network, but admitted that "it is
possible that a student could have an IEP if it is part of a

settlement agreement." Id. at 73. There is no evidence in the record to counteract the unequivocal testimony of the Elwyn representative on this point. Thus, we can only conclude that the School District has provided an IEP for a compensatory education student at Elwyn who is beyond the IDEA's protections.

### D.   History of the Current Dispute

On September 6, 2006, shortly before Ferren's twenty-first birthday that October, the School District agreed to schedule her graduation for 2010 (three years beyond the school year in which she celebrated her twenty-first birthday). Joint Stip. at ¶ 15. But the School District later abandoned this promise in a January 3, 2007 letter in which it informed Elwyn that Ferren should graduate in the spring of 2007 because she was over twenty-one years old and no longer eligible for an IEP prescribing FAPE under the IDEA. Id. at ¶ 16; Admin. Record Ex. 10, Ex. P-1 attached to Ex. 10. On January 22, 2007, Elwyn informed the School District that it would not graduate Ferren unless the School District confirmed that it had satisfied its compensatory education obligations toward Ferren. Joint Stip. at ¶ 18. Elwyn received no response from the School District, and Ferren did not graduate that year. Id. at ¶ 18; Admin. Record Ex. 8 at 42.

In June of 2007, Elwyn informed the School District that Ferren did not graduate and that Elwyn would provide compensatory education to her if the School District agreed to pay the entire cost of services. On August 27, 2007, Elwyn then demanded that the School District develop an IEP for Ferren that "'recognizes that [Ferren] is receiving compensatory education services as a part of FAPE.'" Joint Stip. at ¶ 21 (alteration in original). At that time, Elwyn also insisted that the School District remain as LEA and award a diploma to Ferren when the compensatory education ended in 2010. Id. Because Ferren's parents are not capable of developing a compensatory education program themselves, they asked the School District to develop and sign an IEP for Ferren so that she could continue to attend Elwyn. Id. at ¶ 23. Although the School District is willing to honor its obligation to provide funding for three years of compensatory education, it refuses to develop or sign Ferren's IEP or serve as LEA. Id. at ¶ 24.

On June 13, 2007, the Plaintiffs requested a special education due process hearing. Id. at ¶ 26. A Hearing Officer denied the Plaintiffs' request to treat Ferren's most recent IEP as pendent for the purposes of 20 U.S.C. § 1415(j), and in October of 2007 a Pennsylvania Special Education Appeals Panel denied Plaintiffs' appeal of this decision because it was

10

interlocutory. Id. at ¶¶ 27, 27A. After the due process hearing on September 25, 2007, the Hearing Officer issued an opinion and concluded that the School District was not required to provide an IEP for Ferren during her three years of compensatory education. Id. at ¶¶ 28, 29. The Pennsylvania Special Education Appeals Panel affirmed the Hearing Officer's decision in a November 23, 2007 opinion.  Id. at ¶ 30.

Because of this ongoing dispute, Ferren received no compensatory education during the 2007-08 school year. Id. at ¶ 26. At the hearing on September 25, 2007, the School District noted that "little or none of the funds have been spent . . . nor has the three years been provided in any way, in any meaningful way." Admin. Record Ex. 8 at 98. The record does not reflect whether Ferren is in any kind of educational program during the current school year, and there is no evidence regarding the effects of the gap in Ferren's education. We understand that such a gap has the potential to cause significant harm considering the degree of her disabilities and her "significant regression in skill acquisition." Joint Stip. at ¶ 8. The record only contains predictions about what might happen to Ferren, and we cannot accept those predictions as fact. See, e.g., Admin. Record Ex. 8 at 110-11 (Plaintiffs' expert testified that without

11

individualized instruction he "would expect that [Ferren] would fail to progress and to continue to have very extensive needs for care, for oversight, for living.").

## II.  **Analysis**

The IDEA requires school districts that receive federal funding to provide FAPE to children between the ages of three and twenty-one. 20 U.S.C. § 1412(a)(1)(A). As happened in this case, when families and schools disagree about whether a child's school district is providing FAPE, the affected parents or children may file a complaint, participate in an impartial due process hearing, and appeal the decision of the due process hearing officer to the state educational agency. 20 U.S.C. § 1415(f-g). Any party aggrieved by the outcome of this process may bring an action in state or federal court, as Ferren and her parents did here. 20 U.S.C. § 1415(i)(2).

The parties agree that the School District owes Ferren three years of compensatory education, and the School District has already set aside the money to pay for Ferren's tuition at Elwyn for three years. In their motions, the parties ask us to resolve two narrow questions: (1) whether Ferren's placement at Elwyn should be considered "pendent" for the duration of these

proceedings; and (2) whether the School District must sign Ferren's IEP and act as her LEA during the period of her compensatory education.

## A.  __Standard Of Review__

Under the IDEA, we base our decision on a preponderance of the evidence and award the relief that we determine is "appropriate." 14 U.S.C. § 1415(i)(2)(C). As required under the statute, we received the administrative records from the proceedings below; because neither party requested it, we have not heard additional evidence. See id. In their motions, the parties both claim that there is no material issue of fact.

In reviewing the decisions of the Hearing Officer and Appeals Panels who previously issued rulings in this case, we use a "modified de novo" standard of review. S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 270 (3d Cir. 2003). We must "defer to the [administrative law judge's] factual findings unless [we] can point to contrary nontestimonial extrinsic evidence on the record." Id. See also Wexler v. Westfield Bd. of Educ., 784 F.2d 176, 181 (3d Cir. 1986) ("The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be

13

frustrated if a court were permitted simply to set state decisions at nought."). The factual findings we enunciated above are consonant with those of the administrative factfinders. Furthermore, there are no genuine issues of material fact in the administrative record, and the parties themselves agreed to many of our factual findings through their joint stipulation.

We exercise plenary review over the conclusions of law that the Hearing Officer and Appeals Panels made in their prior decisions in this case. See Warren G. v. Cumberland Cty. Sch. Dist., 190 F.3d 80, 83 (3d Cir. 1999). Because we have legal disagreements with the prior decisions in this case, and no factual disagreements, we will not belabor our discussion of the standard of review. We are also bound by the general standards governing motions for summary judgment, which we rehearse in the margin below.[3]

---

[3] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party.  Liberty Lobby, 477 U.S. at 255.

(continued...)

14

B.    **Statutory Relief And Pendency**

The Plaintiffs have asked us to declare that Ferren's placement at Elwyn was pendent during these proceedings under the "stay-put" provision of the IDEA. Under the relevant part of that provision, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The Hearing Officer denied this request and in doing so relied heavily on a Seventh Circuit case, Board of Education of

---

[3] (...continued)

The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982). It is not enough to discredit the moving party's evidence, the non-moving party is required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257 (emphasis in original). A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. See Liberty Lobby, 477 U.S. at 249-50. Also, If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

<u>Oak Park & River Forest High School District 200 v. Illinois State Board of Education</u>, 79 F.3d 654 (7th Cir. 1996). The Appeals Panel dismissed Plaintiffs' interlocutory appeal because there was no "need for an immediate decision necessary to avoid detriment to the public interest." Admin. Record Ex. 7 at 4. A different Appeals Panel affirmed the Hearing Officer's final decision and similarly relied on <u>Oak Park</u>. Admin. Record Ex. 2 at 9-10.

In <u>Oak Park</u>, a panel of the Seventh Circuit addressed the question of whether Todd, a young adult who was over twenty-one, could benefit from the stay-put provision.[4] 79 F.3d at 656. Todd's parents filed a complaint with the school district just three weeks before Todd turned twenty-one. <u>Id.</u> During the litigation that followed, Todd's parents sought at most two years of compensatory education, but they also argued that the stay-put provision required the school district to pay for Todd's education for the duration of the proceedings. <u>Id.</u> Rather unusually, the parents wanted the school district to pay for a

---

[4] In <u>Oak Park</u>, the Seventh Circuit addressed an identical predecessor to the current stay-put provision, which was then located at 20 U.S.C. § 1415(e)(3)(A). Today, that provision is found at 20 U.S.C. § 1415(j). We will refer to the current site of the stay-put provision.

program that Todd's mother (coincidentally enough) founded. Id.
By the time the Seventh Circuit issued its opinion in Oak Park,
it had been more than two years since Todd turned twenty-one.
Therefore, if the court had granted the parents' petition to
enforce the stay-put provision, Todd would have, as then-Chief
Judge Posner noted for the panel, received "more relief than his
parents ever sought on his behalf." Id. Under these
circumstances, the Seventh Circuit concluded that the stay-put
provision did not apply to Todd because "the entitlements created
by [IDEA] expire when the disabled individual turns 21." Id. at
659.

The Seventh Circuit was especially concerned that the
"parents may be trying to get money for themselves as providers
of compensatory education." Id. at 660.[5] It concluded that
applying the stay-put provision beyond Todd's twenty-first
birthday "would confer benefits beyond the limit set by
Congress." Id. In response to the parents' contentions that
denying the automatic protection of the stay-put provision would
allow districts to expel students on their twenty-first

_____

[5] This is a unique circumstance that is not present in
Ferren's case, as the parties agree that Ferren's parents are not
qualified to plan for, much less provide, the educational
programs Ferren needs.

17

birthdays, even in the middle of disputes regarding their education, Judge Posner explained that "parents who have a well-founded concern that the school district is employing such Machiavellian tactics" may make a motion for a preliminary injunction as a matter of equitable relief. Id. Notably, in Oak Park, the Seventh Circuit did not address the limits of equitable relief but only concluded that a student over the age of twenty-one is not entitled to the automatic injunction the stay-put provision provides.

Our Court of Appeals has made the same distinction between relief under the IDEA and compensatory education. Adults over the age of twenty-one "ha[ve] no right to demand that the District comply with the Act either presently or in the future." Lester H. v. Gilhool, 916 F.2d 865, 872 (3d Cir. 1990). Students who are over twenty-one and seek compensatory education "ha[ve] the right to ask for compensation because the School District violated [their] statutory rights while [they were] still entitled to them." Id. See also Honig v. Doe, 484 U.S. 305, 318 (1988) (holding that a twenty-four-year-old adult was not entitled to the protections of the Education of the Handicapped Act [IDEA's predecessor] because the Act only applied to people between the ages of three and twenty-one). More recently, our Court of

18

Appeals has flatfootedly declared that "[u]nder the IDEA a disabled student is entitled to a FAPE until age 21." Lauren W. v. Deflaminis, 480 F.3d 259, 272 (3d Cir. 2007). But see Carlisle Area Sch. v. Scott P., 62 F.3d 520, 536 (3d Cir. 1995) ("An award of compensatory education extends the disabled student's entitlement to the free appropriate education beyond age twenty-one to compensate for deprivations of that right before the student turned twenty-one.").

In their motion for summary judgment, the Plaintiffs find support for the pendency of Ferren's placement in the broad language of the stay-put provision, which applies "during the pendency of any proceedings" under that section. 20 U.S.C. § 1415(j) (emphasis added). But under our Court of Appeals's precedent, it appears that the IDEA does not protect young adults who are over twenty-one. On this subject, the Seventh Circuit's reasoning in Oak Park is persuasive.  Through the IDEA, Congress intended to provide educational rights to children between the ages of three and twenty-one. Congress limited to this age range the responsibilities states and school districts have to educate children with disabilities. Congress could have extended the IDEA's statutory protections beyond age twenty-one, but it did not do so.

We will therefore deny Plaintiffs' request regarding the pendency of Ferren's placement as a statutory right under 20 U.S.C. § 1415(j). We will discuss below the possibility of granting Plaintiffs' request regarding pendency as a matter of equitable relief.

### C.   **Equitable Relief under the IDEA**

In the IDEA, Congress gave us broad discretion in granting equitable relief to disabled children and their families. A court reviewing a complaint under the IDEA "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Congress "allow[ed] the courts to fashion an appropriate remedy to cure the deprivation of a child's right to a free appropriate public education." Lester H., 916 F.2d at 873. By giving courts the authority to grant "appropriate" relief, Congress "confer[red] broad discretion on the court." Burlington v. Massachusetts, 471 U.S. 359, 369 (1985). The Supreme Court held that the "only possible interpretation is that the relief is to be 'appropriate' in light of the purpose of the Act." Id. at 369. Congress listed a number of purposes for the IDEA; with those most relevant to the inquiry here being:

> (1)(A) to ensure that all children with disabilities
> have available to them a free appropriate public

education that emphasizes special education and related
services designed to meet their unique needs and
prepare them for further education, employment, and
independent living;

(B) to ensure that the rights of children with
disabilities and parents of such children are
protected;

20 U.S.C. § 1400.

We are particularly concerned here that Ferren, a young woman
with severe disabilities, has thus far been unable to take
advantage of the three years of compensatory education that the
School District owes her because it failed to provide her with
FAPE at various points during her childhood and adolescence.
Especially because neither party has identified a suitable
placement for Ferren other than Elwyn, we are concerned that
Ferren's right to the compensatory remedy the School District
owes her has become a "right without a remedy." Lester H., 916
F.2d at 873 (internal quotes and references omitted).

In 1985, the Supreme Court held that in the Education of the
Handicapped Act -- the IDEA's predecessor -- Congress granted
courts the authority to order school districts to reimburse
parents who spend their own funds on private special education if
a court determines that the private placement was proper under
the Act. Burlington, 471 U.S. at 369. In our Circuit, it is well-

settled law that a school district may properly provide
compensatory education to a student past age twenty-one as "a
remedy to compensate [her] for rights the district already denied
[her] . . . . because the School District violated [her] rights
while [s]he was still entitled to them." Lester H., 916 F.2d at
872. See also Burr v. Ambach, 863 F.2d 1071, 1078 (2d Cir. 1988)
(observing that a student over twenty-one who sought compensatory
education could not "go back to his previous birthdays to recover
and obtain the free education to which he was entitled when he
was younger") (reversed and remanded on other grounds).

In Lester H., our Court of Appeals reasoned that without the
remedy of compensatory education past the age of twenty-one,
school districts could wantonly withhold education from older
children with disabilities, and those children would have no
recourse. 916 F.2d at 872. See also Pihl v. Mass. Dept. of Educ.,
9 F.3d 184, 189 (1st Cir. 1993) ("[C]ompensatory education must
be available beyond a student's twenty-first birthday. Otherwise,
school districts simply could stop providing required services to
older teenagers, relying on the Act's time-consuming review
process to protect them from further obligations."). The Court's
award to Lester "merely compensates [him] for what everyone
agrees was an inappropriate placement . . . and belatedly allows

22

him to receive the remainder of his free and appropriate public
education." Lester H., 916 F.2d at 873.

### 1. Ferren's IEP and the School District's Service as LEA

The parties agree that the School District deprived Ferren
of her right to FAPE and, as a result, the School District owes
Ferren three years of compensatory education. The Plaintiffs seek
an injunction obliging the School District to provide Ferren with
an IEP and serve as her LEA, as Elwyn demands. The School
District argues that its only obligation is to write a check for
Ferren's tuition at Elwyn.

The Hearing Officer denied Plaintiffs' requests regarding
the IEP and LEA issues. He glibly remarked that "[i]t would be
easy to wave my hearing officer's wand and order the School
District to just do the one or two little things that [Elwyn] is
requesting in this case," but declined to award that equitable
relief because he determined that Ferren "[did] not offer
sufficient principles or bases for the relief that she seeks."
Admin. Record Ex. 6 at 9.[6] The Appeals Panel affirmed the Hearing

_____

        [6] The Appeals Panel that rejected Plaintiffs'
interlocutory appeal regarding pendency "strongly disagree[d]"
that the School District only has a financial obligation to
                                              (continued...)

Officer's decision, reasoning that the School District does not
have to provide an IEP for Ferren because compensatory education
is not a part of FAPE, and her right to an IEP stems from her
right to FAPE. Ex. 2 at 6-7. According to the Panel, "the
Student's [Ferren's] central request was to extend [her IDEA]
eligibility beyond 21." Id. at 8-9. Again relying on Oak Park,
the Appeals Panel agreed with the Hearing Officer's determination
that "there is no judge-created remedial exception and that
[Ferren] is no longer entitled to FAPE." Id. at 9.

    As discussed above, we agree that Ferren no longer has a
statutory right to FAPE (and as an extension, to an IEP). That
ended when Ferren turned twenty-one. But we are concerned here
with awarding equitable relief, and we have broad powers to grant
appropriate relief that fits the specific facts of this case. To
be sure, we exercise that power carefully and only after close
examination of the facts of this case.[7] We disagree that Oak Park

---

[6] (...continued)
Ferren. Admin. Record Ex. 7 at 4. That panel pointed out that the
School District awarded Ferren "'compensatory education,' not
monetary damages" and that the School District previously stated
that Ferren would remain "an 'eligible' child" during her
compensatory education. Id. at 5.

        [7] Such careful and extended analysis is much more than
a "wave [of our] wand."

forecloses the relief the Plaintiffs seek, and Seventh Circuit decisions in any event do not bind us. Furthermore, the question of the sufficiency of the Plaintiffs' "principles or bases for relief" is one of law, not of fact. It is at this point that we disagree with the administrative decisions below and will depart from their conclusions.

In its motion, the School District only briefly discusses the legal issues in this case and relies primarily on the administrative opinions. Like the Appeals Panel, the School District relies primarily on Oak Park and a letter from the Director of the U.S. Department of Education. Def. Mot. Judgment on Admin. Record at 9-11. The letter confirms, as we have already concluded, that "compensatory education . . . is independent of any current right to FAPE." Letter from Kenneth R. Warlick, Director, Ofc. of Special Educ. Programs, U.S. Dep't of Educ. to Gordon M. Riffel, Deputy Superintendent, Center for Special Educ., Ill. State Bd. of Educ. at 1 (Aug. 22, 2000) (attached to the School District's motion as Exhibit C). However, like Oak Park, the letter does not address whether we may order equitable relief for the IEP and LEA issues. In fact, the letter affirmed that it was "appropriate" for the Illinois State Board of Education to award relief that required a school district to

"reconvene [a student's] IEP team to determine the
appropriateness of compensatory education services" <u>after</u> the
student received a diploma and no longer had a right to FAPE. <u>Id.</u>
at 1. If anything, then, the letter supports Plaintiffs' position
by approving relief that combined compensatory education with
IEP-related services. Nonetheless, from these legal authorities,
the School District concludes that "the requirement to provide a
FAPE - and thus an IEP - extends only through a student's 21st
year." Def. Mot. at 11.

By focusing only on Ferren's statutory rights, the School
District fails to address the central question in this case. It
is not whether Ferren is still entitled to FAPE under IDEA. Under
Third Circuit precedent, she is not. The question is whether --
the School District having denied Ferren of FAPE while she was
still entitled to it under the IDEA -- it is "appropriate" as
<u>equitable</u> relief for us to order the School District to provide
Ferren with an IEP and serve as her LEA, in addition to paying
for her tuition at Elwyn. In fact, in <u>Oak Park</u>, the court
explicitly excepted compensatory education from the panel's
conclusion that IDEA protections end at age twenty-one. <u>Oak Park</u>,
79 F.3d at 660 ("With the exception of compensatory education . .
. the statute's protections are limited to minors.").

26

### a.   Permissible Forms Of Relief

Courts have often awarded compensatory education in the form of tuition reimbursement or an injunction requiring school districts to pay for private school tuition or other services. Compensatory education relief has also, however, taken other shapes. Our Court of Appeals "discern[ed] nothing in the text or history suggesting that relief under IDEA is limited in any way" and concluded that "Congress expressly contemplated that the courts would fashion remedies not specifically enumerated in IDEA." W.B. v. Matula, 67 F.3d 484, 494-95 (3d Cir. 1995) (overruled on other grounds) (emphasis added).

The Court of Appeals for the District of Columbia Circuit characterized compensatory education as "replacement of educational services the child should have received in the first place" and remarked that "compensatory awards should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA." Reid v. District of Columbia, 401 F.3d 516, 518 (D.C. Cir. 2005). The court further reasoned, "If IDEA permits reimbursement for educational services . . . then it must also allow awards of the services themselves." Id. at 522. In support of this observation, the court cited a Minnesota case in which a school district

27

refused to provide a paraprofessional to a disabled student who attended a private religious school. Westendorp v. Indep. Sch. Dist. No. 273, 35 F.Supp.2d 1134, 1135 (D. Minn. 1998). In doing so, the school district violated the student's rights under the IDEA, and the court ordered the district to "provide a classroom paraprofessional aide to [the student] at the school chosen by his parents." Id. at 1138. The Minnesota court did not order the district to pay for the aide or reimburse the parents for the aide; rather, the court ordered the district to provide services.

In another case, a student with disabilities received a diploma, which terminated her statutory right to FAPE, and she began to attend a community college. Puffer v. Raynolds, 761 F.Supp. 838, 843 (D. Mass. 1990). In recognition of her school district's failure to provide her with special education services while the IDEA still covered her, the court ordered the district to provide her with one hour of tutoring per day to assist the student with her college classes. Id. at 854-55. Again, the court did not simply order the district to pay for a tutor and leave the parents to find suitable services on their own; instead, the

court ordered the district to develop a plan and <u>provide</u> the services that the student needed.[8]

Judge Padova of our Court ordered a school district to provide a student with 608 hours of compensatory education, specifically in the areas of assistive technology and transition services. <u>East Penn Sch. Dist. v. Scott B.</u>, No. 97-1989, 1999 WL 178363, at *9 (E.D. Pa. Feb. 23, 1999). In a more recent decision, Judge O'Neill affirmed the compensatory education a hearing officer awarded to a student, including the restriction that it be used for reading, math, or vocational counseling and training. <u>Neena S. v. Sch. Dist of Phila.</u>, No. 05-5404, 2008 WL 5273546 at *4, *9 (E.D. Pa. Dec. 19, 2008).

These decisions illustrate the broad discretion courts have in awarding relief under the IDEA. In determining the appropriate relief, if any, to award in this case, we are clearly not limited to ordering the School District to write a check. We have the power to order the School District to provide Ferren with an IEP and serve as LEA while she gets her compensatory education. Thus,

---

[8] In <u>Puffer</u>, the court ordered the school district to prepare a plan for providing these services to the student but did not require that the school district prepare an IEP. Instead, the court explained that its intent was "to provide [the student] support services which were appropriate to her post-graduate situation." <u>Puffer</u>, 761 F.Supp. at 854.

our task is to weigh the interests on both sides and determine the equitable outcome. This is not an easy task, as we must balance the interests of finality, efficiency, and use of the School District's resources with the compelling needs of Ferren and her family.

### b.   <u>Weighing the Interests of the Parties</u>

We note at the outset that the School District would not be in this position had it honored Ferren's educational rights while she still enjoyed the IDEA's protection. Instead, Ferren and her parents have repeatedly had to resort to legal channels, and time and again they have succeeded. The School District admits this, yet it refuses to accept ongoing responsibility for its past violations of Ferren's rights. Instead, the School District would rather write a check and wash its hands of this young woman and her family. Weighing the equitable interests on both sides, and after conducting an independent review of the evidence (as we must), we decline to accept the School District's dismissive posture.

Courts should shape compensatory education awards according to the specific facts of each case, and in "fashioning discretionary equitable relief under IDEA [we] must consider all

relevant factors." <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 16 (1993). The School District did not address equitable relief at any length in its motion or in response to Plaintiffs' motion, but out of an abundance of caution we examine an issue that the School District repeatedly raised in the legal proceedings before this dispute reached our Court. The School District repeatedly expressed concern that if it signed Ferren's IEP and served as LEA, it would be exposed to ongoing litigation. <u>See, e.g.</u>, Admin. Record Ex. 3 (Def. Resp. to Pltf's exceptions to HO Decision) at 3. ("By compelling the District to provide IEP's into the future, beyond the statutory limit imposed by IDEA, the panel would ensure a never-ending cycle of litigation, for as sure as the sun rises every morning there would be claims of FAPE denials filed by the Parents and Student."); Admin. Record Ex. 8 at 26 (explaining that the School District will be "providing IEPs, FAPE for persons who may be in their 40s, 50s, 60s, and we will never, ever end an obligation to any special ed student as long as there is compensatory education . . . .").

The School District did not make this argument in its motion for summary judgment, yet in weighing the equitable relief appropriate in this case, we agree that this is a legitimate concern. School districts have limited resources, and litigation

31

regarding the IDEA not only consumes the time of educational professionals (e.g., teachers, counselors, and administrators) but is also quite costly. We therefore do not take this concern lightly.  But we refer the School District to the Supreme Court's comment to a district that did not want to reimburse parents for private school tuition: "public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice." Florence County, 510 U.S. at 15. In a similar spirit, the School District will not be weighed down by endless litigation if it fulfills its role in developing and issuing Ferren's IEP and serving as her LEA for three years. This does not mean that the School District must provide an IEP for every student to whom it owes compensatory education. Instead, based on the facts of this case, this is an appropriate part of Ferren's particular award of compensatory education.

We have little sympathy for the School District's request that we limit its involvement to the role of a banker for her three years of compensatory education. The School District deprived her of more than its accounting services, and in

32

compensating her for that deprivation we find that it is equitable -- dare we say, fair -- to require the School District to do more than simply write a check. It is also worth recalling that the School District ambiguously stated that Ferren would remain an "eligible" child during at least some portion of her compensatory education, agreed to postpone her graduation until 2010 (three years beyond her twenty-first birthday) but then revoked that promise, and failed to respond to Elwyn's communications from the time the School District unilaterally decided that Ferren should graduate in 2007 until the parents requested a due process hearing. The School District's attorney also wrote to the Hearing Officer that "Ferren has received compensatory education in the form of a substantial trust fund and three (3) years of compensatory education beyond her 21st birthday." Admin. Record Ex. 13 at 2 (emphasis added). In so doing, the School District suggested that it would give Ferren something more than the trust fund, yet now the School District wants to rescind the second half of its attorney's statement.

Especially considering these actions, it would be inappropriate for us to affirm the Appeals Panel decision and deny all relief to Ferren.

33

Finally, although we would rule for Ferren on the IEP and LEA issues even without this fact, the School District never rebutted Elwyn's testimony that the School District was providing an IEP to another student in Ferren's situation. It would be "absurd" for us to rule in the School District's favor when it appears to be providing an IEP and related services to another student who is also over twenty-one.

Carefully weighing all of these facts, and after an independent review of the evidence, we conclude that it is appropriate relief under 20 U.S.C. § 1415(i) for the School District of Philadelphia to do the following for each of the next three years: reevaluate Ferren, develop and issue her IEP, and serve as her LEA.

### 2.   Pendency

We apply the equitable approach outlined above to the issue of whether it is appropriate to grant Plaintiffs' request for a declaration that Ferren's IEP is pendent under 20 U.S.C. § 1415(j). As we explained above, we agree with the Plaintiffs that Oak Park and Third Circuit precedent regarding the IDEA's protections do not foreclose equitable relief on this issue. However, in their motion, Plaintiffs do not explain why we should

grant this equitable relief. Again, we have no evidence in the record regarding the harm that Ferren may have suffered since she left Elwyn at the end of the 2006-2007 school year, and we cannot simply presume facts that are not on the record before us. We know that Ferren had no compensatory education during the 2007-2008 school year, and an expert testified that she would suffer harm from a break in her school programming. But we simply do not know whether that harm came to pass. On the other hand, in its motion and skeletal response to the Plaintiffs' motion, the School District ignored the possibility of equitable relief on pendency and simply argued that because Ferren is no longer entitled to FAPE under the IDEA, she should get no relief beyond the school's funding of her education.

On the record before us, it would not be appropriate to grant the Plaintiffs' request that we declare Ferren's placement as pendent under 20 U.S.C. § 1415(j) as a matter of equitable relief. The School District supported Ferren's education at Elwyn through the end of the 2006-2007 school year, as the IDEA required them to do, and we have no evidence that Ferren has been harmed by any gap in her education since then. Under these circumstances, we cannot conclude that it would be fair and equitable to declare her last IEP as pendent and potentially

35

cause the School District to be liable for any harm Ferren may have suffered from the break in her education.

Furthermore, in evaluating the overall case, the relief we will grant on the IEP and LEA issues will ensure that Ferren is able to use the three years of compensatory education the School District owes her. This, it seems to us, is the central issue in the case and will allow Ferren to be fully compensated for the School District's past violation of her rights. In light of this, we will grant Defendant's motion on the issue of pendency.

### III. **Conclusion**

Because Ferren is over twenty-one years old, the statutory protections of the IDEA no longer directly or automatically protect her. We have, however, broad discretion under the IDEA to grant appropriate relief to parties who are aggrieved by the outcome of state administrative processes.

Here we have carefully evaluated the facts and positions of the parties.  We conclude that it is equitable to oblige the School District to reevaluate Ferren, develop and issue her IEP, and serve as her LEA during each of the next three years. On the other hand, on this record, we will not grant the Plaintiffs'

request that we declare her most recent IEP as pendent during the long course of these proceedings.

The relief we award constitutes a fair balance of the parties' interests and will allow Ferren to take advantage of the three years of compensatory education to which she is entitled. Despite their past differences, we trust that the parties will work together in good faith to implement our decision.


BY THE COURT:

__\s\Stewart Dalzell

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FERREN C., et al.                :     CIVIL ACTION
                                 :
          v.                     :
                                 :
SCHOOL DISTRICT OF PHILADELPHIA   :     NO. 08-858

<u>ORDER</u>

AND NOW, this 28th day of January, 2009, upon
consideration of the defendant's motion for judgment on the
administrative record (docket entry # 11) and plaintiffs'
response thereto (docket entry # 14), plaintiffs' motion for
judgment on the administrative record (docket entry # 12) and
defendant's response thereto (docket entry # 15), it is hereby
ORDERED that:

1.    The plaintiffs' motion for judgment on the
administrative record is GRANTED IN PART and DENIED IN PART;

2.    The defendant's motion for judgment on the
administrative record is GRANTED IN PART and DENIED IN PART;

3.    Plaintiffs' request that Ferren's IEP be declared
pendent for purposes of 20 U.S.C. § 1415(j) is DENIED;

4.    Within sixty days of this Order, and annually
during the three years of Ferren's compensatory education, the
School District of Philadelphia will REEVALUATE Ferren and
develop and issue an Individualized Educational Plan for her;

5.   The School District of Philadelphia will serve as the Local Educational Agency for Ferren's Individualized Educational Plan during the three years of her compensatory education; and

6.   Absent an agreement on the subject between the parties, the plaintiffs shall FILE their motion for attorneys fees and costs, if any, by February 6, 2009, with defendant's response due by February 20, 2009.


                              BY THE COURT:


                              __\s\Stewart Dalzell


                                    -2-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FERREN C., et al.          :     CIVIL ACTION
                           :
        v.                 :
                           :
SCHOOL DISTRICT OF PHILADELPHIA :    NO. 08-858

<u>JUDGMENT</u>

AND NOW, this 28th day of January, 2009, in accordance with the accompanying Memorandum and Order, JUDGMENT IS ENTERED:

1.   In favor of plaintiffs regarding Ferren's Individualized Educational Plan and the School District's service as a Local Educational Agency for three years and against defendant School District of Philadelphia on these issues; and

2.   In favor of defendant School District of Philadelphia and against plaintiffs regarding the declaration of Ferren's last valid IEP as pendent under 20 U.S.C. § 1415(j).


BY THE COURT:


___\s\Stewart Dalzell